UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 11-117-GWU

PRISCILLA MCGUIRE, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

                Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

    In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Priscilla McGuire, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of cervical and lumbar pain secondary to degenerative disc disease, osteoarthritis with right arm and leg pain, anxiety with panic disorder and post traumatic stress disorder features, and depression. Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. McGuire retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 18-23). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 36, "limited" education, and lack of transferable job skills could perform any jobs if she were limited to lifting 20 pounds occasionally and 10 pounds

11-117 Priscilla McGuire

frequently, along with the ability to sit, stand, or walk up to six hours each in an eight-hour day, and also had the following non-exertional restrictions.  (Tr. 51-2). She: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally use her upper extremities to reach or work overhead; (3) required simple work with no fast-paced assembly lines, no frequent changes in work routines, no requirement for detailed or complex problem solving, independent planning, or the setting of goals; (4) required work that did not require rigid production schedules; and (5) could have only occasional interaction with the general public not requiring extended conversation, coordinated activities, or dispute resolution. (Id.). The VE responded that there were jobs that such a person could perform, at both the light and sedentary levels, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 53).

On appeal, this court must determine whether the ALJ's decision is supported by substantial evidence, or if there was an error of law.  The plaintiff had filed prior applications for SSI, one of which was denied in an ALJ decision of June 12, 2000, while another was dismissed because she failed to appear at a supplemental administrative hearing.  (Tr. 13).  Because the ALJ found a material change in her condition, he did not apply the holding in Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997).  The earliest date the plaintiff would be eligible for benefits was the date of her current SSI application, April 27, 2007.  (Tr. 100).

11-117 Priscilla McGuire

Mrs. McGuire alleged disability due to neck and back arthritis, a right arm, leg, and shoulder "condition," sciatic nerve pain, degenerative disc disease in her neck, and anxiety attacks. (Tr. 118). She presented evidence from several medical sources reflecting treatment of neck and low back pain, including MRI reports. The most recent MRI of the cervical spine, dated February 26, 2009, showed degenerative disc disease, loss of normal cervical lordosis consistent with muscle spasm, and disc bulging at the C4-C5 level, but the radiologist noted that a previously-recognized disc protrusion had decreased in size with resolution of spinal stenosis and compression of the anterior aspect of the spinal cord. (Tr. 491). A MRI of the thoracic spine the same date was normal (Tr. 493), and a MRI of the lumbosacral spine was said to be stable with continued degenerative disc disease at L4-S1 (Tr. 494). A neurosurgeon, Dr. James Bean, examined the plaintiff on March 17, 2009 and reviewed the MRI reports. He found normal strength in the upper and lower extremities, normal reflexes, no focal sensory loss, and a normal gait. (Tr. 497). He concluded that she was not a candidate for surgery and recommended that she continue treatment with a chiropractor. No functional restrictions are suggested.

A state agency physician who had previously reviewed the evidence on December 8, 2007 concluded that the plaintiff could perform medium level exertion with occasional climbing of ladders, ropes, and scaffolds and limited reaching in all directions. (Tr. 458-64).

The plaintiff asserts that the ALJ improperly rejected the opinion of a treating source, Larry Hubbs, a registered nurse practitioner at the office of her family physician. Mr. Hubbs completed a medical report in April, 2008 limiting the plaintiff to lifting three pounds or less occasionally and one pound or less frequently, standing and walking a total of no more than 30 minutes a day, sitting no more than one hour a day and prohibiting most postural activities. (Tr. 535-8). However, the ALJ rejected this assessment, correctly noting that under the Commissioner's regulations at 20 C.F.R. § 416.913 a nurse practitioner is not considered an "acceptable medical source." (Tr. 21). The ALJ concluded that the extreme limitations found by Hubbs were inconsistent with most of the objective evidence of record and granted them little weight. This determination is supported by substantial evidence. As the Commissioner notes, Hubbs apparently only saw the plaintiff on three occasions and he noted relatively few objective findings. For instance, he noted that she was not in acute distress, and had a normal posture and gait. (Tr. 540). She did have painful motion in her cervical spine, but it is not clear how this problem would create such an extreme restriction on standing, walking or sitting.

The plaintiff also objects to the ALJ's rejection of restrictions listed by a consultative physical examiner, Dr. James C. Owen. Dr. Owen had the most recent MRIs to review, as well as the report of Dr. Bean. His physical examination noted that the plaintiff had only mild difficulty getting on and off the examination table and

in and out of the room, although she was holding her back and using a cane. (Tr. 581). She could bend forward 70 degrees at the waist. Straight leg raising tests were negative. All of her ranges of motion were normal except for her neck. (Id.). In the narrative portion of his report, he reported that there was no obvious radiculopathy in her neck but she had a good history of radicular symptomology in the lumbar spine, a comment apparently based on a finding of decreased sensation in the third to fifth toes of her right foot. (Tr. 583). Dr. Owen stated that Mrs. McGuire would have moderate difficulty lifting, handling, and carrying objects. However, he then completed a physical residual functional capacity assessment limiting her to light level lifting (consistent with the ALJ's ultimate conclusion) but limiting sitting to four hours a day (no more than one-half minute at a time) and standing and walking two hours each (no more than one-half minute at a time). (Tr. 586). He felt that she would require a cane to ambulate, and would have the ability to occasionally reach, handle, finger, feel, push, pull, use foot controls, climb ladders and ramps, balance, stoop, kneel, crouch, crawl and be exposed to work place hazards, temperature extremes, and pulmonary irritants. (Tr. 586-90).

     The ALJ stated that he granted "some weight to the assessment of Dr. Owen to the extent it shows the claimant retains the capacity for light work." (Tr. 20). He rejected greater limitations as being inconsistent with the preponderance of the record. (Id.).

The plaintiff asserts that this discussion of Dr. Owen's report was inadequate and should have been supported by specific examples. However, it is clear that there is nothing in Dr. Owen's report that is consistent with an ability to stand or walk for only 30 seconds at a time. Moreover, as a one-time examiner, Dr. Owen's opinion is not entitled to the same deference as a treating source. Atterberry v. Secretary of Health and Human Services, 871 F.2d 567, 572 (6th Cir. 1989). Under the circumstances, the court finds the rationale for the rejection of Dr. Owen's extreme restrictions to be adequate. The ALJ's functional capacity finding could reasonably have been based on the state agency reviewer, although he gave the plaintiff the benefit of the doubt in being more restrictive. (Tr. 458-64).

The plaintiff also objects to the ALJ's treatment of the mental factors. During the relevant period, the plaintiff was treated by a psychiatrist, Dr. Melbourne Williams, on several occasions, although his office notes are difficult to read. He did prescribe medication and indicated in his most recent office note, dated June 12, 2009, that her response to therapy was "fair." (Tr. 554). However, he completed a mental residual functional capacity assessment the same date asserting that she would have "extreme" limitations in every area on the form. (Tr. 506-7, 577-8). The ALJ did not find the psychiatrist's restrictions persuasive because they were without basis either in Dr. Williams's treatment records or in the other evidence, and because he felt they were inconsistent with the claimant's

11-117  Priscilla McGuire

reported activities of daily living, level of social functioning, and ability to initiate, attend, and complete tasks.  (Tr. 20).

The plaintiff correctly notes that the opinion of a treating source such as Dr. Williams is entitled to great weight, but it must be supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial medical evidence.  20 C.F.R. § 416.927(d)(2); <u>Wilson v. Commissioner of Social Security</u>, 378 F.3d 541, 544 (6th Cir. 2004).  Given the lack of clear detail in Dr. Williams's office notes, combined with the extreme nature of the restrictions he provided, a reasonable factfinder could have concluded that the limitations were conclusory and not based on objective evidence.  Moreover, other evidence does not seem consistent with "extreme" restrictions.  For instance, Mrs. McGuire's treatment for anxiety and post traumatic stress disorder in 2005 and 2006 appears to have been related, to a considerable extent, to situational factors involving conflict with her husband.  (Tr. 188-95).  Apparently, she and her husband had reconciled to the extent that he now lived in the same house with her, although they were divorced, and he would drive her to her appointments.  (Tr. 34, 42).  She reported daily activities including getting her three children off to school, left her house for an hour daily, could shop for groceries until she was limited by back pain, and was visited daily by two friends.  (Tr. 127-31, 147).  In addition, the ALJ had the benefit of a consultative psychological evaluation by Psychologist Cristi M. Hundley.  (Tr. 265).  Dr. Hundley provided diagnoses of a generalized anxiety disorder, a

11-117 Priscilla McGuire

panic disorder with agoraphobia, and "rule in" post traumatic stress disorder "Per previous history." (Tr. 270). She concluded that the plaintiff did not appear to have a mental health problem which would prevent her from being employed. (Id.). State agency psychological reviewers concluded that Mrs. McGuire did not even have a "severe" mental impairment. (Tr. 271, 465). Therefore, the ALJ was not merely substituting his opinion for that of the treating psychiatrist. He did allow the plaintiff some restrictions in her ability to withstand high pressure jobs and interaction with the general public, a conclusion which gave her the benefit of the doubt. Accordingly, the court finds no reversible error.

The decision is supported by substantial evidence, and will be affirmed.

This the 15th day of March, 2012.



Signed By:

*G. Wix Unthank*

United States Senior Judge